THE FARMERS AND MECHANICS' BANK OF GEORGETOWN *vs.* THE PLANTERS' BANK OF PRINCE GEORGE'S COUNTY.— *December*, 1839.

'The exception in the 2nd sec. of the act of 1715, ch. 23, exempting from the operation of the act of limitations, such accounts as concerns the trade or merchandize between merchant and merchant, their factors and servants, does not apply to transactions between banking institutions.

A notification by a bank to a depositor, that his claim will not be paid on demand at the counter, dispenses with the necessity of a demand, as preliminary to the right to sue, and from that time the act of limitations begins to run.

APPEAL from *Prince George's* County Court.

This was an action of *assumpsit*, brought upon the 15th November 1834, by the appellants against the appellees. It had been before this court at June term 1837, and will be found reported in 8*th Gill & Johnson*, 449.

The plaintiffs declared upon an indebtedness for sundry matters and things properly chargeable in account; money paid, laid out and expended, lent and advanced, and upon an accounting together; and the parties filed the following agreement, for the purpose of making up the issues in the cause, viz:

To the several counts of the plaintiff's nar, the defendant pleads,—1st. *Non assumpsit.* 2nd. *Non assumpsit infra tres*

*annos*,—and 3rd. *Actio non accrevit infra tres annos.* To the two last pleas as applied to the first count of the plaintiff's declaration, the plaintiff replies, the saving in the statute of limitations of accounts, concerning the trade or merchandize between merchant and merchant, their factors and servants, which are not residents within this province.

To this replication the defendant rejoins, 1st. That the plaintiff and defendant were not merchants within the meaning of the said statute; and 2nd. That the dealings between the said parties do not concern the trade or merchandize between merchant and merchant, within the meaning of the statute. And the plaintiff files the general surrejoinder and issue thereon.

To the defendant's second and third pleas as applied to the second and third counts of the plaintiff's nar, the plaintiff enters the general replication and thereupon issue.

To the defendant's first plea, the general replication and issue. Pleadings admitted in short, and errors of form waived, and leave given to amend.

In this case it is agreed, that all errors in pleading on both sides be released. The plaintiffs then in support of the issues joined on their part, proved to the jury, that a law passed the Congress of the *United States*, which it is agreed may be read from the printed statute book, incorporating the plaintiffs as a banking institution in the *District of Columbia*, and which is now in force by continuing laws—That the defendants during the period hereinafter referred to, were a banking institution in the State of *Maryland*, doing business as such under a law of *Maryland*, which it is also agreed may be read from the printed statute book—that from the year 1821 to 1829, there were dealings between the parties in their capacity of banks, consisting of mutual remittances by each, of checks, notes and drafts sent for collection, the proceeds of which, when paid, were to be placed in their respective books to the credit of the party sending, as current deposites. It was then proved, that in the usual case of deposites made by private individuals, they were payable only at the counter of the bank, and that such was considered the right of banks receiving notes, drafts and

424    CASES IN THE COURT OF APPEALS

Farmers and Mechanics' Bank vs. Planters' Bank.—1839.

checks from other banks for collection, it being the right of the bank holding the funds of the other, to pay them only at her counter, but that the practice of banks reciprocally receiving and remitting drafts, &c., for collection, was not the same as that which generally governed, in the case of private depositors and banks, because between the latter it was not usual to have mutual accounts, but that in the case of banks so dealing together, balances accruing the one way or the other, were generally paid by voluntary remittances from the debtor bank to the creditor bank, or remittances made upon request of the creditor bank, when such course was found convenient to the bank holding the deposites. And it was further proved, that in the case of the plaintiffs and defendants, and in the course of their aforesaid dealings, no demand had ever been made by either at the counter of the other, although the defendants had in numerous instances drawn checks on the plaintiffs for balances due them, and the plaintiffs in some few instances had drawn checks on the defendants, which checks on either side, were presented by the party holding them, at the counter of the bank on which they were drawn, and were there paid. And it was further proved, that in the dealings between banks, the right to pay elsewhere than at the counter of the bank was never claimed as a matter of right. It was further proved, that in the case of private depositors and banks, the latter sometimes, at the request of the depositor, made payments elsewhere than at their counter. The defendants then proved, that in August, 1829, all dealings between the parties terminated, and that from that time to the present, there has been no acknowledgment of indebtedness by the defendants to the plaintiffs; that on the 10th of August 1829, the defendants suspended specie payments, and discontinued banking operations, except so far as was necessary for the winding up of their old business; that on the said 10th August, 1829, the defendants adopted the following preamble and resolutions, announcing the fact of such suspension to the public.

"Whereas, the very general prevalence of reports injurious to the credit of this institution, have produced such an effect

upon its circulation, and such an incessant demand for specie, that in the opinion of the board it has become necessary, at least for a period, to suspend the redemption of its paper. In adopting this course, the board of directors consider it their duty to assure the creditors of the institution, that the funds of the bank are in their opinion abundantly sufficient to discharge all its obligations as soon as the same can be made available, and they also are justified in the belief, that the period when this can be effected is not far distant; the board likewise make known to the stockholders that, as far as they can at this time determine the situation of the bank, they entertain a decided conviction that there will not be ultimately a considerable loss; indeed they are persuaded there will be none, because it is not believed that the amount of bad debts will more than equal the surplus profits; therefore, whilst they earnestly advise the bill holders and depositors to submit to no sacrifice, they feel themselves perfectly warranted in holding out to the stockholders the prospect of full indemnity. It is in contemplation to appoint a committee to investigate carefully the affairs of the bank, and when the same shall be completed, a full exposition of its affairs will be laid before the public; Therefore, resolved, that until further notice, the paper of the *Planters' Bank of Prince George's County* will not be redeemed, and that the president cause this preamble and resolution to be communicated to the public, by inserting a copy in one or more newspapers in the *District of Columbia* and the cities of *Baltimore* and *Annapolis*, and putting the same at the door of the banking house."

And that in said month of August, 1829, the said preamble and resolutions were known to the president and cashier of the plaintiffs, and that the National Intelligencer, a public journal printed in the *District of Columbia*, in which the same were published in said month of August, 1829, was at that time taken by the plaintiffs. It was further proved on the part of the plaintiffs, that the balance due from the defendants to the plaintiffs in said month of August, 1829, resulting from the aforesaid dealings, was, according to the proof offered by the

plaintiffs, the sum of           dollars, and there was no evi-
dence that the same has been paid, though no debt of any
amount appeared upon the books of the defendants to be due
to the plaintiffs.   And thereupon the defendants prayed the
court to instruct the jury, that upon the preceding evidence, if
believed by the jury, the plea of the statute of limitations is a
bar to the plaintiff's right to recover in this action upon the
second and third counts of the plaintiff's declaration; and that
the verdict upon the issues joined upon the pleas to these
counts, must be for the defendants,—which instructions the
court (STEPHEN, J., DORSEY and KEY, A. J.) gave, and the
plaintiffs excepted.

2nd. After the preceding evidence had gone to the jury,
and which is by agreement made a part of this bill of excep-
tions, the plaintiffs offered to read in evidence to the jury the
following official letter of the defendants, addressed and sent on
or about its date to the *Union Bank of Georgetown*, but never
communicated to the plaintiffs until after the institution of this
suit, for the purpose of explaining the aforegoing preamble
and resolution, and of showing that it was the intention of the
defendants, in the preamble and resolution, to limit its suspen-
sion of specie payments to the holders of its paper, and not to
extend the same to its depositors.

> *Planters' Bank of Prince George's County,*
> *August 25th,* 1829.

*Dear Sir,*—Your two letters of the 22nd were received by
the mail yesterday, and one enclosing a copy of your account,
showing a balance in your favor of $792.02.   The only note
for collection deposited by you, and not over due is Sasscer's,
due 7–10 September, and this you had better direct to be re-
turned to you, for he may insist upon paying it in the paper of
this bank, which I am not prepared to say he would not have
a right to do.   Ray's draft on J. A. Magruder is not paid.
Our board has come to a determination to make no distinction
between depositors or bill holders under any circumstances.
The paper which you hold I would advise you to deposite,
and take a certificate for it.   Your account shall be examined

and adjusted as speedily as possible. At present we are very much engaged.

In haste, dear sir, yours, very respectfully,

J. R. MAGRUDER, *Prest.*

And further offered to prove for the same purpose, that in the practice and usages of banks, discriminations as to the mode of payment between depositors and holders of bank paper, are sometimes recognized and admitted; but the court refused to admit such evidence to go to the jury for the purpose aforesaid; to which refusal the plaintiffs excepted.

*3rd Exception.* After the evidence offered or proposed to be offered by the plaintiffs and defendants, as contained in the preceding bills of exceptions, which it is agreed shall be incorporated in the present bill of exceptions, the plaintiffs further offered in evidence the charters of the plaintiffs and defendants (agreed to be read in evidence as provided in the former bills of exceptions) and further proved to the jury, that the plaintiffs and defendants had exercised all the powers conferred on them by said charters, from the dates thereof until the 10th of August 1829, when the defendants suspended specie payments and discontinued banking operations, as stated in the preceding bills of exceptions, and that the mutual remittances of the plaintiffs and defendants consisted of notes and checks and drafts, sometimes drawn on the party to whom the remittances were made, and sometimes on other parties, and that the debits in the accounts of each party consisted in part of drafts on such party, drawn by the other party and passed to third persons, and that from said mutual dealings and accounts, there results a balance due the plaintiffs on the 10th of August 1829, and yet unpaid, of $2,308.69. And thereupon the plaintiffs prayed the court to instruct the jury, that if they believe the evidence aforesaid, then the plea of the statute of limitations is not a bar to the recovery of the plaintiffs on the first count of its declaration,—which instruction the court refused to give; to which refusal the plaintiffs excepted.

The jury found a verdict for the defendants, and the plaintiffs below brought this appeal.

The cause was submitted on written arguments to BUCHAN-AN, C. J., ARCHER, DORSEY, CHAMBERS, and SPENCE, J.

C. Cox for the appellants.

This cause has heretofore been before the court at June term 1837, on the appeal of the present appellee, the defendant below.   On that occasion, the judgment below was reversed, and the cause was remanded under a procedendo.

The case presented is that of mutual dealings, in the usual course of banking, between the present appellant, a foreign banking corporation, and the appellee, a domestic corporation, during several years, extending down to some time in the year 1829, and resulting in a balance in favor of the appellant of several thousand dollars.   The action of the appellant was brought in the year 1834, and the appellee insists, by several pleas, on the statute of limitations as a defence.   To these pleas, so far as made to the first count of the appellant's nar, there is a replication of the saving in the statute in favor of such accounts as concern merchant and merchant, who are not residents, and issue is joined thereon: as to the other counts, issues are taken on the pleas.

The first and second exceptions presented by the record are on these latter issues, and may be considered together.   According to the ruling of this court on the former appeal, the present appellant's case was defective in not showing the general usage and understanding of banks—that current deposites are only payable of right, in the absence of special stipulations to the contrary, at the counter of the depository.   That defect, it will be seen, has been fully supplied in the present record.   And a case is made out under the ruling of this court, entitling the appellant to recover, unless the appellee can discharge itself by showing a legal demand made by appellant, and a refusal by the appellee, to pay, more than three years before the institution of this suit, or circumstances dispensing with such demand.   And this court having ruled that notice to the appellant, by the appellee, that payment would not be made on demand, is a circumstance dispensing with such de-

mand,—the appellee *successfully* insisted in the court below, on the second trial had there, on a certain preamble and resolution of appellee of August 10th, 1829, admitted to have been communicated about the time of their date to the president and cashier of the appellant, as conclusive of such notice. This forms the ground of the appellant's first exception.

It will be seen by the preamble and resolution which are incorporated in the record, that the pressure upon the appellee at the time was *exclusively* from its *note* or *bill holders*, and that *these* alone are covered by the *terms* of the resolution. No pressure from depositors is intimated, and it is clear that their case was excluded either *purposely*, or through *inadvertence*, as not being brought to the attention of the board when framing the preamble and resolution; and the former cause might well be supposed, as discriminations in favor of depositors over bill holders are founded on equity and reason.

The appellant, on the opinion of the county court embodied in the first exception, offered evidence furnished by the appellee explanatory of the preamble and resolution, showing that the appellee did not consider them as extending to depositors, and passed a subsequent order, not communicated to the appellant, embracing their case; (see the official letter of the appellee to the *Union Bank of Georgetown*, of August 25, 1829, set forth in the record;) and also offered parol evidence to show that such discriminations between bill holders and depositors are recognized in the practice of banks. The court refused to admit any of this explanatory evidence, and this forms the ground of the second exception.

The appellee seeks, by a broad construction of the preamble and resolution, extending it beyond its *terms* or *intention*, to sustain an odious and unconscionable *defence* against the claim of the appellant. Well established principles require that in such cases the meaning and intention of the appellee be expressed by the clearest terms; that it derive no advantage from its own ambiguity of expression, and that the narrowest construction be given to its language. Applying this test, the appellant relies on the *terms* of the preamble and re-

solution, which exclude the case of depositors, as an answer to the pretension of the appellee; and in so far as foreign aid is admissible in the construction of the preamble and resolution, this answer is sustained by the evidence offered of the usage of banks, and by the direct admission of the appellee in the letter of August 25, 1829, referred to. It would surely be to mete a harsh measure of justice to the appellant, to bar its just claim by a broad construction of the act of the appellee in the preamble and resolution, palpably against the meaning and contemplation of this party at the time.

The third bill of exceptions presents to the court the question, whether the appellant is not entitled to the saving in the statute of limitations, 1715, ch. 23, sec. 2, in favor of such accounts "as concern the trade or merchandize between merchant and merchant which are not residents within this province." The character of the *accounts,* within the acknowledged and express powers of the parties, comes within the exception. *Richardson and al. vs. Bradshaw and al.,* 1 *Atk.* 128. *Hankey vs. Jones, Cowp.* 746, 751; and so with the characters of the parties, one being a domestic and the other a foreign corporation. *Bond and al. vs. Jay,* 7 *Cranch,* 350.

J. JOHNSON and T. G. PRATT for the appellees.

This cause now comes before the court upon the appeal of the plaintiff, (the present appellant.) When before, in this court, it was brought here by the defendant, (the appellee,) and will be found reported in 8 *Gill & Johns.,* 449.

The declaration contains three counts: 1st. For matters and articles properly chargeable in account; 2d. For money paid, laid out and expended, and for money had and received; and 3d. *On an insimul computassent.* To this declaration the defendant pleaded non assumpsit and limitations, in both forms; and issues were joined upon these pleas.

At the second trial, the pleadings were by agreement amended.

According to this agreement, the defendant pleaded the same pleas to the nar, which remained the same as before, that is:

1st. Non assumpsit; 2d. Non assumpsit infra tres annos; and 3d. Actio non accrevit, &c. To the pleas of limitations as applied to the plaintiff's first *count*, that is: the count for matters and articles, the plaintiff replied, the savings in favor of merchants' accounts. The defendant rejoined, denying the truth of the plea, and the issue was thereupon joined. To the pleas of limitations, with reference to the plaintiff's second and third counts, that is: the money and insimul computassent counts, the plaintiff took issue; and issue was also joined upon the plea of non assumpsit. The verdict was for the defendant.

Three exceptions were taken at the trial by the plaintiff's counsel, upon which, in his written argument, he makes three questions here.

The first is, that the preamble and resolution of the 10th of August, 1829, offered in evidence by the defendant, applies exclusively to bill or note holders, and not to depositors.

2d. That a letter of the defendant, written to a different party, on the 25th of the same month, and year, was admissible as explanatory of the intention of the defendant, in adopting the said preamble and resolution. And,

3d. That conceding both these questions to be against him, he is entitled to a reversal of the judgment; because these two parties are merchants, and the dealings between them concern the trade of merchandize, within the meaning of the act of 1815, chap. 23, sec. 2.

These three questions will be briefly discussed, in the order in which the appellant's counsel has presented them.

The writ in this case was issued on the 15th November, 1834; and the first exception shows, that "all dealings between the parties terminated in August, 1829," from which time, there had been no acknowledgment or promise, in any shape or way, to take the case out of the statute. The claim, therefore, is clearly barred by the statute, unless there is something in the nature of the dealings between the parties, to obviate that effect.

It may be admitted that the judgment in the first trial was reversed, because there was no evidence of the usage that,

current deposites in a bank, are only to be paid upon demand at the counter, and that the proceeds of notes and drafts deposited by one bank in another for collection, are payable in the same way.

The appellant supposes he has now supplied that proof, and that therefore, his case is clear of that difficulty. It may be well doubted whether he has yet succeeded in establishing such an usage in regard to the dealings of *bank with bank.* The proof certainly shows, that with respect to deposites made by *individuals* with banks, payment is only to be made at the counter: but it also shows, as a part of the plaintiff's own proof, that "the practice of banks, reciprocally receiving and remitting drafts, &c. for collection, was not the same as that which generally prevailed in the case of private depositors and banks."

"That in the case of banks so dealing together, balances accruing the one way or the other, were generally paid by *voluntary remittances* from the debtor bank to the creditor bank, or remittances made upon the request of the creditor bank." &c.

The appellees, therefore, contend that the plaintiff has not shown such a "well known and recognized usage," with regard to the *mutual dealings of banks,* as is required by the opinion formerly pronounced by this court, to extricate their case from the operation of the statute.

But suppose he has done so, the judgment must still be affirmed.

This court in deciding the case before, at page 467 of the book, 8 *Gill & Johns.,* say, that admitting the existence of the usage, limitations would not commence running, unless the payment of the plaintiff's claim had been refused, or some act had been done by the defendants, (a knowledge of which is brought home to the plaintiff) *dispensing* with the necessity of a demand at the counter of the bank; and that such dispensation is abundantly furnished by the acts of the defendant, of the 10th of August 1829. These acts of the 10th of August

1829, was the suspension of specie payments, and discontinuance of banking operations.

And the court only denied full effect to these acts, because they say the proof of their having been brought home to the plaintiff's knowledge, was not of that conclusive character as would warrant the court in assuming the fact, without the intervention of the jury.

In the present case, however, there is no room for doubt upon this subject, as the exception states that the preamble and resolution announcing the facts to the public, "were known to the president and cashier of the plaintiffs in August 1839," and published in the *District* at that time, in a paper taken by the plaintiffs.

The fact of *knowledge* is thus brought home to the plaintiffs more than five years before suit brought, and this court, having already said, that such fact dispensed with a demand at the counter of the defendant, and exposed the claim to the operation of the statute, one would have thought that the question was no longer an open one.

But the counsel for the appellant insists that, his case is not concluded, because he says, the preamble and resolution, in which the defendants announced their failure, had respect only to the holders of their notes, and not to their depositors.

But is this the fair construction of the papers in question?

The preamble states, that the reports which were in circulation, injurious to the credit of the bank, have produced such an effect upon its circulation, and such *demands* for specie— of course from both depositors and note holders. It further says, that the funds of the bank, in the opinion of the board, are sufficient to discharge *all its obligations as soon as the same can be made available.*

The terms, *"all its obligations,"* of course includes depositors, and the assurance to them, as well as to the other creditors of the bank, that their claims shall be paid as soon as the funds of the latter can be made available, was giving them distinctly to understand that their claims could not be paid *at that time.* Was not the declaration that they should be paid

*thereafter*, equivalent to telling them that they could not be paid at *that time*, and consequently that they need not prefer their demands at the counter of the bank?

There are other terms in this preamble, however, which put this matter at rest. The directors, in speaking of the ultimate ability of the institution to pay its debts, &c., use this language—"Whilst they earnestly advise the bill holders *and depositors to submit to no sacrifice*," &c.

Now, why urge depositors to submit to no sacrifice, if the bank was in a condition to pay them on demand? Was it not in effect, if not in terms, telling them, you cannot be paid now, and of course, a demand at our counter will be fruitless?

The resolution which follows this preamble is to be construed with reference to it, and when so construed, amounts to an annunciation to all the creditors of the bank, of every description, that the latter would not, or could not, at that time pay them.

But this question is *res adjudicata*, and no longer open for discussion.

Upon recurring to the 2d exception in the former report of this case, at page 454, the court will find that this very preamble and resolution is the evidence, and the only evidence, offered by the defendants, to dispense with the necessity of demand, and refusal to pay the plaintiff's claim, supposing such demand and refusal to be necessary to the defence of limitations. And they will further find, by looking at the 1st exception, page 450, that the plaintiffs at that trial, as in this, claimed *as depositors*, and not as note holders—And yet the court, in expressing their opinion upon the 2nd exception, say, that this very evidence, the preamble and resolution (if known to the plaintiff) would abundantly dispense with the necessity of a demand and refusal "at the counter of the *Planters' Bank.*"

The proof of both plaintiff and defendant upon the last trial of this cause is precisely what it was upon the first. The court in deciding the first say, that all that was necessary to render the defence of limitations available, was the bringing the proof home to the knowledge of the plaintiffs; and yet the plaintiffs?

counsel now says, that that proof applied not to them, but to another class of creditors.

It is confidently submitted that upon this point the judgment will not be reversed.

Before leaving it, however, it may be well to refer to the case of *Green vs. Johnson*, 3 *Gill & John.* 394, as an answer to what is said about the harsh character of the defence.

This court in the case referred to, speak of the act of limitations as "a statute of repose," and declare their determination not to fritter it away by judicial refinements and subtle exceptions.

2. The second question relates to the admissibility of the letter of the 25th August, 1829, written by the defendants to the *Union Bank of Georgetown*, and to certain parol proof offered for the purpose "of explaining the aforegoing preamble and resolution," contained in the first exception, and of showing what was the intention of the defendants in adopting and publishing those papers.

The plaintiff insists that he had a right to offer this evidence *for the purpose of explaining the written preamble and resolution* in which the defendants announced to the public the fact of their suspension.

Now if there be any ambiguity in this preamble and resolution, it is unquestionably a *patent*, and not a *latent* one, and the rule is settled beyond all controversy, that parol or extrinsic evidence is not admissible to explain an ambiguity apparent upon the face of the instrument. 2 *Stark. Ev.* 546, 547. *Phillip's Ev.* 497.

And this court, in the case of *McCreary vs. McCreary*, 5 *G. & J.* 157, adopting the language of 3 *Stark.* 1017, 1050, say, that though it may be shown by parol that a contract was made, wholly collateral to, and distinct from a written one, such evidence cannot be used to *vary the terms* of the written instrument.

But independently of this objection, the proof offered can have no influence upon the decision of the cause.

The exception shows that the letter proposed to be read,

was not seen by the plaintiffs until *after the commencement* of this suit. So far, therefore, as the plaintiffs are concerned, the preamble and resolution are to be construed with reference to their own terms alone, and if according to the fair interpretation of these terms, a knowledge of which is brought home to the plaintiffs more than five years before suit brought, they *were advised* that their claim upon the defendants would not be paid if demanded at the counter, they are barred, according to the express decision of this court at the former trial.

But there is a further objection to the admissibility of the proof, which would seem to be insuperable.

The letter and the parol proof were offered *together*, and for the same purpose, to explain the preamble and resolution. The court was not asked to *discriminate*, and to let in either the one or the other, but the offer was of both together, and for the same identical purpose. If, therefore, either was inadmissible, the court did right in rejecting both; and the exception was taken to the court's refusal to admit both, and not to their refusal to admit either. Now the parol proof has reference to the practice and usages of banks, and this was offered to show what the *Planters' Bank* meant by a publication, in which they announce their inability to meet their banking obligations, and a discontinuance of all banking operations. Suppose, however, the letter is admissible, the effect of it is to strengthen our interpretation of the preamble and resolution, and to show that they were intended to embrace both note holders and depositors.

This letter was written on the 25th August, 1829, *fifteen days after* the adoption of, and publication of the preamble and resolution. The president of the *Planters' Bank*, in this letter, says, "our board has come to a determination to make no distinction between depositors and bill holders, under any circumstances."

The argument on the other side, is, that this letter is evidence that an order subsequent to that of the 10th of August, 1829, had been passed, and that in this subsequent order, the distinction between note holders and depositors was destroyed.

Is this, however, the fair interpretation of the letter? No *order*, between the 10th and 25th of August, 1829, is shown; but the letter is said to be *evidence* of such intermediate order. But is it not the more obvious construction to suppose, that the president's letter, of the 25th August, 1829, referred to the resolution of the 10th of the same month, adopted only fifteen days before? And when he says, the board *has* come to a determination, &c., he meant, the board, by their resolution of the 10th, came to such determination.

3rd. In the third exception, the plaintiff attempts to bring his case within the saving or exception in the act of 1715, chap. 23, sec. 2. The language of the act is, that all actions upon the case, &c., shall be commenced within three years ensuing the cause of action, "other than such accounts as concern the trade of merchandize between merchant and merchant, their factors and servants, which are not residents within this province."

It has been seen that this question arises upon the plaintiff's replication to defendant's plea to his first count. Upon the pleas to his second and third counts, he takes issue, and the only question upon them was, whether the cause of action accrued within the period of limitations. *Green vs. Johnson and ux.*, 3 *Gill & John.* 393.

In answer to the defendant's plea of limitations to his first count, (which was for matters and articles properly chargeable in account,) he replies the savings in favor of merchants' accounts.

Our first objection to the plaintiff's right to recover upon this count is, that no evidence was offered in support of it. The evidence, the court will see, relates exclusively to the money counts, to the pleas to which the plaintiff took issue.

Not a particle of evidence was offered in support of his count, for matters and articles, (his first count,) and yet, in the third exception, he prayed the court to instruct the jury, that limitations was no bar to his recovery upon that count.

But do the charters of these two banks, and the nature of their dealings, constitute them merchants, and make their

accounts concern the trade of merchandize within the exception of the statute?   Though the benefit of this exception is now a good deal extended and made to embrace many persons who were not originally supposed to be within it, no case can be found, it is believed, in which it has been applied to the accounts of *incorporated banks*.   The charter of the *Planters' Bank* is a public law, and in none of its provisions will the court find any authority to deal in merchandize.   *Act* 1817, *ch. sec.* 94.

It is to be remembered by the court that to bring this case within the exception, it is not only requisite that these two banks should be regarded as merchants within the contemplation of the act of 1715, but their accounts must concern the *trade of merchandize*, though their charters give them no power to deal in merchandize, and the exception expressly shows that their dealings were of a totally different character.

But again; according to the letter of the act of 1715, to bring a case within the exception, both parties must reside out of the State.   In the case referred to on the other side of *Bond vs. Jay*, 7 *Cranch*, 350, the Supreme Court decided, that it was sufficient if either of them resided out of the State.   It is still necessary, however, that *one* of the parties should be a non-resident; and it is supposed, that as the plaintiff here is a bank in the District, that they are within the saving.

The plaintiff then, rests his claim to an exemption from the statute, upon the ground of his being a non-resident, or being beyond seas.

But as the act of 1818, ch. 216, takes away the savings in favor of persons beyond seas, contained in that of 1715, his case would seem to be barred, even if the other objections to his right of recovery upon this count are overruled.

That it was the policy of the legislature by the law of 1818, to place the foreign and domestic creditor upon the same footing, with regard to the operation of limitations upon their claim, is perfectly manifest, and is besides distinctly asserted by this court in the case of *Frey vs. Kirk*, 4 *G. & J. at page* 521.

Conceding however, that each and all of these questions are against the appellee, still the judgment will not be reversed.

The dealings between these parties terminated in August 1829, and the writ in this case issued on the 15th of November 1834; the determination of the defendant to suspend payment, and discontinue banking operations, except to wind up their old business, was formed on the 10th of August 1829, and in the same month and year this determination was known to the plaintiffs. This, the court has decided, dispensed with a demand at the counter, (if such demand was ever necessary,) and caused the statute to run from that time. At the time the suit was brought, therefore, upwards of five years had elapsed from the accrual of the cause of action, and the cessation of all dealings between the parties. It is contended, then, that conceding for the sake of the argument, that these two banks are to be regarded as merchants, and their dealings to concern the trade of merchandize, and that the repealing law of 1818 does not apply to the case, *still, as no item of the account is within the period of limitations*, the claim is barred.

Lord *Hardwicke*, in the case of *Welford vs. Liddle*, 2 *Ves.* 400, says, the exception did not mean that the defendant might not plead the statute "in all cases where the account is closed and concluded between the parties, and the dealing and transaction over."

Lord *Northington*, in a bill for an account of mercantile transactions, permitted the defendant to set up the plea of limitations, observing "that merchants, after six years total discontinuance of dealings, were as much within the statute as other accounts." *Martin vs. Heathcote*, 2 *Eden*, 169.

Lord *Rosselyn*, in *Crawford vs. Liddel*, in 1796 decided the same thing. And in *Barber vs. Barber*, 18 *Ves.* 286, *Sir Wm. Grantt*, Master of the Rolls, decided, that in an account between merchant and merchant, the statute was a bar, there being no item within the time limited by the statute.

In *Coster et al. vs. Murray*, 5 *John. Ch. R.* 522, Chancellor *Kent*, at page 530 says, he thinks the weight of authority in favor of the application of the statute to open merchants'

accounts, when there is no item within the period, and expresses his surprise that the question is not considered settled in *England.* He says in the case before him that, assuming it to be one concerning the trade of merchandize between merchant and merchant, he should think the statute well pleaded.

The Court of Appeals of *South Carolina,* in the case of *Van Rhyn vs. Vincent,* 1 *McCord C. R.* 310, express their approbation of the doctrine of Chancellor *Kent,* and say, they can see no reason why merchants and factors, after all dealings between them had ceased, should not as well be entitled to the protection of the statute as other persons.

It is submitted, therefore, that the weight of authority, both in this country and in *England,* is in favor of the efficacy of the plea, even in the case of merchants' accounts, where all dealings have ceased for a longer period than the statute allows.

The act of 1715, ch. 23, in favor of dealings between merchant and merchant, *excepts* only those actions for which account would lie; the action must be founded on an account. "The case protected by the exception is not every transaction between merchant and merchant, not *every* account that might exist between them, but it must concern the *trade of merchandize.*" 6 *Peters,* 164. "It is not an exemption attached to the *merchant* as a *personal* privilege, but an exemption which is conferred on the *business* as well as the person by whom that business is carried on." 6 *Peters,* 164. It must therefore not only be an account between merchant and merchant, but the *dealings* or the *items* of the account must be such as *concern the trade of merchandize.* Now it is confidently insisted (that if the parties in this case are to be considered as merchants,) that the items of claims sought to be recovered in this case do not constitute an account, and that they certainly do not *concern the trade of merchandize.*

Suppose two merchants were to contract for the rent of a house, the hire of a servant, or the purchase of a farm, such dealings, although between merchant and merchant, would

not be protected by the exception in the act, because the subject matter of the dealings would not concern the trade of merchandize.

In the present case, the items which constitute the claim of the plaintiffs below, certainly do not concern the trade of merchandize, and without repudiating the doctrine established by the Supreme Court of the U. S. in the case of *Spring &amp; others vs. The Executors of Gray*, 6 *Peters*, 164, cannot be brought within the exceptions of the act of 1715, ch. 23.

DORSEY, J., delivered the opinion of the court.

The third exception in this case was designed to raise the question, whether under the exception, in the 2nd section of the act of 1715, chap. 23, as to such accounts as concern the trade of merchandize, between merchant and merchant, their factors and servants, which are not residents of this province, the claim of the appellants was exempted from the operation of that act of limitations. We are clearly of opinion that it was not. It is embraced neither by the letter nor the spirit of the saving in the act of assembly. The interest of banking institutions, as well as public policy require that, liquidation of balances between banks should be regular and frequent, and the intention of the legislature must be unequivocally expressed, before we would ascribe to its enactment, a design to hold out encouragement to the banks to practise, *inter se*, a different course of conduct.

With the instruction given by the county court in the first bill of exceptions we think the appellants have no right to complain. To the public notice given by the appellee of the 10th of August 1829, it appears to us no fair construction can be given, which does not import notice to the depositors, as well as bill holders of the *Planters' Bank of Prince George's County*, that it had suspended specie payment of its deposites, as well as its notes. A bank suspension upon any other principles, would be an anomaly without a precedent, and it is the necessary implication from the terms of the publication, or why "earnestly advise the bill holders and depositors to submit to

no sacrifice." The effect of this notification was a sufficient annunciation to the appellants, that their claim would not be paid in specie on a demand at the counter, or by a remittance of equivalent value; they were therefore relieved from the necessity of seeking payment in either mode as preliminary to their right of action, and from the moment their authority to sue at law was complete, the act of limitations began to run.

The refusal of the court to permit the evidence offered by the appellants, in their *second* bill of exceptions, to go to the jury, for the purpose for which it was offered, furnishes no sufficient ground for the reversal of the judgment. The letter produced was not addressed to the appellants, as a modification of the public notice before referred to, and its contents were not communicated to them till after the institution of their suit. It could not therefore have the effect of depriving the appellants of the right to sue, acquired in virtue of the public notice. But had it been addressed to the appellants, and by them received, it had no tendency to establish the fact for which it was offered. Instead of showing that the appellants had no right to sue after the publication of the suspension of the *Planters' Bank*, it reiterated in more emphatic terms those facts which dispensed with the requisition of a preliminary demand on the part of the appellants. It was testimony, therefore, adverse to their pretensions, and could in no way redound to their benefit; and consequently they have no ground to complain of its rejection. The rejection by the court of the other testimony offered by the appellants, in association with this letter, does not furnish a ground for the reversal of the judgment. The object of offering in evidence the letter and proof referred to in the second bill of exceptions, was for the purpose of explaining the preamble and resolution in the first bill of exceptions, "and of shewing that it was the intention of the defendant, in the preamble and resolutions, to limit the suspension of specie payments to the holders of its paper, and not to extend the same to its depositors." The letter and proof were both embraced in the same offer, and were withheld from the jury by the same refusal of the court. The letter was in

perfect accordance with the obvious meaning of the preamble and resolution, and proves the reverse of that for which it was offered; and had the other proof offered been permitted to go to the jury, it could not possibly have availed the appellants for the purpose for which it was offered. They therefore sustained no injury by the conrt's refusing to permit the evidence to go to the jury.

Concurring with the county court in their decisions as stated in all the bills of exceptions, we affirm their judgment.

JUDGMENT AFFIRMED.