JOHN B. EMORY and CYRUS GAULT, *vs.* CORNE-
LIUS H. OWINGS and FRANCIS R. GRIFFITH,
Exc'rs of NICHOLAS OWINGS, use of EDWARD
GREEN.

Where objection is made to all the proof offered, if any portion of it is admis-
sible, the court are not bound to sustain the objection, even if the residue
be inadmissible.

Where the incompetency of a witness is supposed to rest upon a deed not
used on the trial for any purpose, such deed cannot authorise a decision by
this court, that the court below erred in not rejecting the evidence of the
witness.

If the object for which evidence is offered does no injury to the party against
whom it is offered, its admission, though it may not be legal evidence, is
not such error in the court below as to warrant a reversal of their judgment.

When testimony is admitted for a particular purpose, the party cannot use it
for any object he thinks proper, and if any such attempt is made the court
will, upon the application of the opposite party, prevent it, where the use
attempted is an improper one.

Where, upon appeal, the appellate court decides a question presented by the
record, and the cause is remanded for a new trial, this decision is binding
upon the court below, and cannot be reversed by this court upon a second
appeal in the same case.

Where one witness stated that a quarry had never been opened by the lessor
or any former proprietor previous to the 25th of July 1836, and another
that, to the best of his recollection, it was first opened in the latter part of
the year 1837, this is sufficient to forbid the reversal of the decision below
granting a prayer, which left the question of the opening of this quarry
prior to the 25th of July 1836, to the finding of the jury, upon the ground
that there was no evidence to sustain such a prayer.

Where both parties take exceptions and appeal, and the judgment is affirmed,
the party in whose favor the verdict and judgment was given below, cannot
be injured by the rulings of which he complains, and of course cannot ask
a reversal of the judgment.

CROSS-APPEALS from Baltimore county court.

This was an action of *debt,* brought by the executors of
Nicholas Owings against Emory and Gault, to recover $500
rent on a lease made by said Owings, on the 11th of June
1840, for the term of six years. The lessees, Emory and

Gault, were to enter the demised premises on the 11th of November 1840, and the rent claimed was for the *first* year. The defendants pleaded *nil debet*, with leave to give in evidence, upon notice, any special matter which might be pleaded in bar.   At the first trial of this case several exceptions were taken, and upon appeal the judgment, which was in favor of defendants, was reversed and a procedendo awarded, in virtue of which the present trial was had under the same pleadings. The first appeal is reported in 6 *Gill*, 260.   In the course of the present trial numerous exceptions were taken by the plaintiffs, which the opinion of this court on their appeal renders it unnecessary to state, except as to the evidence contained in them which was incorporated into defendant's exceptions, and which sufficiently appears in the opinion of this court and in the following exceptions taken by the defendants.

*1st Exception.* The plaintiffs having rested their case upon the lease sued upon and proof that Nicholas Owings, the lessor, died after November 1841, and before this suit was brought, the defendants, for the purpose of proving that the Fox Rock Quarry was open at the date of the lease from Beale and Cornelius Owings to Caleb Owings, and of the assignment thereof to Charles Wood and others, both dated the 25th of July 1836, gave in evidence said lease and assignment, found in 6 *Gill*, 262 *and* 263, and the deed from said Nicholas Owings to said Beale, Cornelius H. and Caleb D. Owings, dated the 20th of November 1835, referred to in said lease of the 25th of July 1836: the assignment of this lease of July 1836, by Wood & Co. to defendants, dated 2nd of May 1839, and proved in substance, by John L. Stearns and Charles G. Emory, that said quarry was first opened by the order of Swett & Co., by one Clough, a sub-contractor under them, in 1831.   They also proved by Charles Wood, that said quarry was first opened by Wood & Co., under the following agreement or contract signed by Nicholas Owings, dated the 9th of November 1835:   "I agree to let Wood & Co., which firm is composed of Charles Wood, Joseph Yager, John L. Stearns, Edward Green and Caleb D. Owings, quarry

and take away what stone they wish from the Fox Rock Quarry, and the meadow field for five years, on their paying me twenty-five cents per perch, and the damage which they may do me in traveling through or over my farm." To rebut this the plaintiffs offered the evidence of Caleb D. Owings, which, with the rest of this exception, is fully stated in the opinion of this court. (This exception states that Caleb D. Owings was a competent witness, but in the argument of the case in this court the counsel for the defendant contended, that he was incompetent, mainly upon the ground that he, with his brothers, had united in a conveyance of this quarry to their father. This deed, dated the 28th of March 1840, is found in the record of the first appeal, but was not in any way used, or agreed to be used, upon the second appeal; and the witness had also executed a release of his interest in his father's estate to the plaintiffs, and was examined without objection.)

The other exceptions of the defendant are sufficiently stated in the opinion of this court. The cause was tried in the county court before FRICK, C. J., and LE GRAND, A. J. The verdict and judgment were for the plaintiffs, and both parties appealed. It was agreed by counsel that certain papers, such as the leases of the 11th of June 1840, and 25th of July 1836, need not be inserted in the exceptions in this case, but might be read in the Court of Appeals from the record on the former appeal. This agreement did not embrace the deed from Caleb D. Owings and others to Nicholas Owings, of the 28th of March 1840.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*Edward Hinkley* for the defendants below.

The ground of defence taken by the defendants is, that a prior lease of the same premises, dated the 25th of July 1836, to continue for five years, was outstanding and unexpired on the 11th of November 1840, when the defendants were author-

ised to enter under the lease on which this suit was brought. The two leases were therefore concurrent for eight months, and during that time the junior lease was void. The opinion on the former appeal, in 6 *Gill*, 264, puts the case upon the ground that the two leases were not *conflicting*. The law of conflicting leases, and the rights of parties under them, are very fully stated in 6 *Law Lib.*, 48; *Comyn on the Law of Landlord and Tenant*, 85, 86; and in 1 *Meeson and Welsby*, 747, *Neale vs. McKensie*, cited in *Archbold's Law of Landlord and Tenant*, 144, in 53 *Law Lib.*, 146. There is nothing to show that the lease of 1836 was ever surrendered, and this could only be done by deed. *Stat. 29th Charles* 2, *ch.* 2, *sec.* 3. *Lammott vs. Gist*, 2 *H. & G.*, 433, 436. Possession under the lease of 1836 was proved on the former trial by Yager, and he being dead, his testimony then given is admissible. *Bowie vs. O'Neale*, 5 *H. & J.*, 226.

The court on the former appeal, in 6 *Gill*, 266, decided, that the quarry did not pass under the lease of 1836, unless it was then open, and they based their opinion on an old case in 5 *Coke's Rep.*, 22, in which it was decided, that a coal mine did not pass by a lease, unless it was an open mine. But it seems to me, with deference, that there is a great distinction between a *granite quarry* and a *coal mine;* the former is on the surface of the ground, exposed to the eye, while the latter, especially in England, is hidden, often many hundreds of feet, below the soil. But we contend, that the evidence shows that this was an *open stone quarry* in 1836. The documentary evidence shows this, for, as early as 1835, it was called a "*quarry*" in the deed of Nicholas Owings to his sons. The meaning of the word quarry is a place where stone are cut and squared. The lease of 1836 also calls it a quarry, and the articles of co-partnership show that it was worked in 1835, and a shop built on the premises as early as the 11th of *November* 1835. Again, the parol evidence of Stearns, Emory, and the other witnesses, was sufficient to authorise the court to say to the jury, that the quarry was open on the 25th of July 1836.

The lease upon its face, and the other documentary evidence, showed that the quarry was open, and the parol evidence of Caleb D. Owings ought not to have been admitted to show that it was closed. A party cannot introduce evidence to rebut his own witnesses, nor can parol evidence be admitted to contradict written evidence, or to show the intention with which the grant is made. *Buchannan's Lessee vs. Steuart*, 3 *H. & J.*, 329. *Ringgold vs. Ringgold*, 1 *H. & G.*, 74. Declarations made after title conveyed, cannot be admitted to impair the title. *Hurn's Lessee vs. Soper*, 6 *H. & J.*, 276, 281. The opinions of Owings were not admissible upon any principle, for not being a quarryman he was not an expert, and therefore not competent to testify upon such subjects. But again, he was an interested witness—the deed of 1840 shows this.

As to the second exception, it is clear that an injunction bill between other parties is not evidence in an action at law, especially for the complainant in such bill. *Dorsey vs. Gassaway*, 2 *H. & J.*, 402, 409. The admission of the first bill, without objection, does not admit the second bill, for improper evidence admitted on one side, without objection, will not justify the admission of similar evidence on the other side, when objected to. *Walkup vs. Pratt*, 5 *H. & J.*, 54.

*Robert J. Brent* for the plaintiffs below.

The material question is, whether parol evidence is admissible to repel parol evidence, or the legal effects and presumptions arising from such evidence? The lease of 1836 does not on its face convey the right to *quarry*, so the court have decided in 6 *Gill*, 260, on the former appeal in this case. We therefore only offer proof to sustain the lease as it stands. The *onus* is upon them to show that it was open, and we have the right to show that it was closed, both for the purpose of contradicting their witnesses and to show that the lease is right on its face. They offer to *contradict* the lease by *parol* evidence, and if they can do this, is it not competent for us to repel such evidence by evidence of the same kind? This

lease of 1836 was intended to pass only the superficies of the soil, and is part of the machinery of the mortgage, executed on the same day, in order to enable Wood & Co. to construct a railroad to the quarry. The consideration is the annual payment of *six cents.* That the legal effect of this picayune lease standing *per se*, may be controled and modified by the circumstances known to all parties under which it was executed. See 13 *Peters,* 97, *Bradly vs. Steamboat Co.* 1 *Greenlf. on Ev.*, sec. 287, *note* 1.

If any part of this offered evidence of Caleb D. Owings was questionable, it was in relation to the quarry being opened by trespassers, but no prejudice resulted to the defendants, as the witness said he knew nothing of such trespasses. The residue of the evidence is clearly admissible, because it shows, by the very party under whom the defendants claim, that at the date of the lease the quarry had not been in fact opened, nor was it supposed to be. No exception was taken to the illegal portion, but to the whole *en masse.* See 3 *Gill,* 220.

*2nd Exception.* It is not stated for what purpose they offered this injunction, but as it was dissolved, and as Stearns, their witness, proved that Swett & Co. continued to quarry, until stopped by the injunction, we had a right merely to fix the date of their alleged continuance there, to introduce the second and final injunction, which stopped Swett & Co. on 1st March 1833, and this is the only point of this exception, and there is no error in it.

*3rd Exception.* First, was there evidence of this quarry being opened, if at all, without the consent of Nicholas Owings? All the evidence on the part of the defendants of its being opened, went to prove that Swett & Co., if any body, opened it, and there is no evidence of a license to them to open a quarry, *except* the mere license to get stone sills from the land contiguous to the rail-way. If then it *was opened* previously to 25th July 1836, it was competent for the jury to find that it was without the consent of Nicholas Owings. Besides this, Caleb D. Owings swears, that it never was

opened by Nicholas Owings "as a quarry," and also that his father enjoined Swett & Co.

Then as to the law of this instruction.   It simply assumes, that if the lessee in the picayune lease *knew*, at its execution, that the quarry had never been opened with the consent of its proprietor, then the lease did not pass the right to use the quarry.   Is not this correct?   Could it be allowed that where a lessee receives a lease, which on its face passes no quarry right, he shall, nevertheless, exercise the right to work an open quarry, when he knows that it had never been used as a quarry by the lawful proprietors, but only opened by wrong and by trespass on his just rights?   Certainly, these facts being known, the law would not presume, without equivalent words in the lease, an intent to grant or to receive a right to use a quarry which had never been used, as part and parcel of the thing demised.   If the rule of law be, that a lease may be expanded or contracted in the subject matter demised, by parol evidence of what has been used, as appurtenant to the house or lot demised, then this instruction must be correct, as it stands on the same principle.   See the very strong cases put in 1 *Greenleaf's Ev.*, sec. 286.   *Ropps vs. Barker*, 4 *Pick.*, 239.   13 *Peters*, 97.   *Farrar vs. Stackpole*, 6 *Greenleaf*, 154.

In the event of an affirmance of the judgment, as against the defendants, the appellees will abandon their exceptions.

ECCLESTON, J., delivered the opinion of this court.

This case comes before us on a second appeal.   The report of the first will be found in 6 *Gill*, 260.

According to the former decisions the *stone quarry* called the *Fox Rock Quarry*, which, by the lease of the 11th June 1840, on which this suit is founded, was demised to the defendants, was not covered or conveyed by the lease of the 25th July 1836, unless the *quarry* was opened at the date of that lease. This decision, of course, was binding on the court below, and at the second trial it became an important inquiry whether the quarry had been opened as far back as the 25th July 1836. To show that it had been, the defendants gave a variety of

evidence, to rebut which the plaintiffs offered to prove, by Caleb D. Owings, that he was the person named as lessee in the last mentioned lease ; that the *Fox Rock Quarry* had been opened by Swett & Co., against the consent of Nicholas Owings, (who then possessed and owned the same,) and by trespass upon his premises ; that the said rock never had been opened as a quarry by the said Nicholas Owings, or any former proprietor of the same, which facts were all known to the witness at the time he received the said lease ; and also, that it was not believed by him, nor was it understood between the parties to said lease at the time of executing the same, that the quarry was an open quarry. The defendants objected to the admissibility of the evidence thus offered, but the court overruled the objection and authorised the testimony to be given. But on examination the witness was unable to prove anything in regard to the alleged trespasses. To the opinion and ruling of the court the defendants then excepted.

The objection is to all the proof offered. If, therefore, any portion was admissible the court were not bound to sustain the objection. *Budd vs. Brooke,* 3 *Gill,* 220. Under the circumstances, we think there can be no doubt of the right of the plaintiffs to prove that the quarry never had been opened by Nicholas Owings, or any former proprietor. And this is part of the testimony included in the objection. This being the case, it is not necessary for us to express any opinion in reference to the residue of the evidence, as it is a matter of no importance whether it was or was not admissible.

It has been contended that this testimony should have been rejected, because the witness, Caleb D. Owings, was incompetent. We have not been able to discover anything to establish the incompetency of this witness from the proof contained in the record of the second trial, or from the papers or testimony set forth in the record of the first trial, and authorised by the agreement of counsel to be used on this appeal. The only paper which could create a doubt on the subject is the deed of the 28th of March 1840, from Caleb D. Owings, B. Owings and C. H. Owings to Nicholas Owings, which was offer-

ed and read in evidence on the former trial, but does not appear to have been used at all on the second. Neither the bills of exceptions, or the agreement referred to, make the slightest allusion to it. The deed not being regularly before us, it cannot authorise a decision that the court below erred in not rejecting the proof because of the incompetency of the witness, which incompetency is supposed to rest upon a deed not used before the court on the trial, for any purpose.

The fourth bill of exceptions on the part of the plaintiffs, shows, that this witness had released his interest in the estate of his father, (the said Nicholas Owings,) and that he was examined as a witness without any objection to his competency appearing to have been made.

The evidence and instruments of writing, included in the first, second, third and fourth bills of exceptions on the part of the plaintiffs, are made part of the first bill of exceptions of the defendants.

J. L. Stearns, a witness examined by the defendants, having testified that the quarry in controversy was first opened in 1831, by Swett & Co., stated, that "they continued to quarry until the injunction, and that the quarry remained in the state in which they left it until Wood & Co. got it in 1835." This testimony is to be found in the plaintiffs' second exception.

According to the defendants' second exception, they offered a variety of testimony in reference to the opening of the quarry, and read to the jury, without objection by the plaintiffs, an injunction bill filed by Nicholas Owings against Enoch Swett and others, on the equity side of Baltimore county court, in 1832, the answers thereto, and the order dissolving the injunction. The particular purpose for which these papers were read was not stated. But immediately after the reading of them the plaintiffs offered an injunction bill, filed in the same court, in 1833, by Nicholas Owings against the same persons, as the firm of Swett & Co., and also the order granting an injunction. When this proof was offered it was stated to be for the purpose of showing that this in-

junction was the one referred to by John L. Stearns in his testimony. The defendants objected to the admission of these proceedings, but the court refused to sustain the objection.

Stearns had stated, that Swett & Co. continued to quarry until the injunction. It will be seen by the plaintiffs' fourth bill of exceptions, that whilst testifying in regard to this quarry Caleb D. Owings stated, that Swett & Co. had a contract with the Baltimore and Ohio Railroad Company, to furnish sills for the road. That the father of the witness stopped Swett & Co. by injunction; "that they raised the injunction, and worked afterwards, but he did not know whether they worked at the Fox Rock quarry or not." Stearns did not speak positively as to the year when Swett & Co. quit work at the quarry, but *thought* it was in 1832. The bill offered by the defendants was sworn to on the 29th of March 1832, and the order dissolving the injunction is dated the 20th of April following. The order granting the injunction on the bill offered by the plaintiffs bears date the 1st March 1833. There is nothing in the record to show whether this writ was ever dissolved.

If the object for which these proceedings were offered did no injury to the defendants, the admission of them, although they might not be legal evidence, was not such error in the court below as demands a reversal of their judgment. 8 *Gill*, 370.  5 *G. & J.*, 223.  10 *G. & J.*, 442.  12 *G. & J.*, 493. 9 *Gill*, 160.

The chief object of the defendants was to prove that the quarry was open on the 25th July 1836. Stearns had testified, that in 1831 Swett & Co., through a sub-contractor under them, first opened the quarry, and continued to work in it "until the injunction," which he *thought* was in 1832. The defendants produced and read an injunction issued the same year. Supposing, very naturally, that this was offered as the one alluded to by the witness, although not so stated, the plaintiffs presented the other, declaring the object for so doing. If Stearns had spoken *confidently* as to the year 1832, the last injunction might have militated against the defendants'

case by being used as a contradiction of their witness, but his language is doubtful in reference to the year, whilst he speaks with confidence, certainly not doubtfully, as to the working of the quarry by Swett & Co. until the injunction. If that was in 1833 it was not injurious to the defendants but quite the contrary, the important fact for them to establish being, that the quarry was opened prior to the 25th July 1836.

This could be as well and as effectually done by showing that Swett & Co. carried on their quarrying operations there, until 1833, as if they had stopped the year before.

When testimony is admitted for a particular purpose, it does not follow that the party introducing it may then use it for any object he thinks proper, and if any such attempt is made the court will prevent it upon the application of the opposite party, where the use attempted is an improper one. But there is nothing to show that in this instance there was any effort on the part of the plaintiffs to use this evidence for any other than the purpose declared when making the offer.

We do not see that the court committed an error in granting the prayer of the plaintiffs contained in the defendants' third bill of exceptions. The prayer was: "Upon the whole evidence to the jury on the trial of this cause, the plaintiffs, by their counsel, pray the opinion and direction of the court to the jury, that if the jury find that said quarry was not, previously to 25th July 1836, opened with the consent of Nicholas Owings, the proprietor thereof, and that said facts were known to Caleb D. Owings, the lessee, in the lease of that date, that the right to use said quarry did not pass by said lease."

The argument of the defendants' counsel was not understood by us as denying the correctness of the law involved in the prayer, if the former decision of the Court of Appeals, in 6 *Gill*, 260, is to be considered as the law of this case. He found fault with that decision for applying to the Fox Rock quarry the principles established in relation to a mine, in *Saunders'* case in 5 *Coke's Rep.*, 22. We, however, cannot *on the present occasion*, adopt the views of the counsel in op-

position to what has been decided, in this very case, by the appellate tribunal.    But it was insisted that the instruction should have been refused, because there was no evidence on which it could be based.    Let us see how far this assumption is sustained by the record.    In the defendants' first bill of exceptions will be found a statement of what the plaintiffs' offered to prove by Caleb D. Owings.    Among the proof there stated as offered is the following: "That the said Fox Rock quarry had been opened by Swett & Co. against the consent of Nicholas Owings, who then possessed and owned the same, and by trespass upon his possession, and that said rock never had been opened by said Nicholas Owings, or any former proprietor of the same, as a quarry, and that said offered facts were well known to said Caleb D. Owings at the time he received the aforesaid lease."    The lease of 25th July 1836, being the one alluded to in a former part of this opinion, we have stated the overruling of the defendants' objection to the admissibility of this offered evidence, and that the court authorised the same to be given.    But it seems that, on examination, the witness was unable to prove anything in regard to the alleged trespasses.    From this we understand the witness did testify that the Fox Rock quarry never had been opened by the said Nicholas Owings, or any former proprietor of the same, as a quarry, which he, Caleb D. Owings, well knew at the time he received the lease of 25th July 1836. Charles Wood stated in substance, that he could not say precisely when this quarry was first opened, but to the best of his recollection it was in the latter part of the year 1837. This, if there was no other testimony on the subject, is sufficient to forbid our reversing the decision below upon the ground of there being no evidence on which the prayer could be predicated.    Granting the prayer did not encroach upon the rights of the jury in any respect, they were left at full liberty to consider and decide upon the truth and the weight of all the evidence in the cause given by both parties.

Concurring with the court below in regard to the decisions

in all the bills of exceptions on the part of the defendants, the judgment below will be affirmed.

*Judgment affirmed.*

Upon the appeal of the plaintiffs below the same judge delivered the following opinion of this court:

In 8 *Gill*, 376, under similar circumstances, the Court of Appeals say: "In the case of Donovan's appeal, the verdict having been in his favor and the judgment affirmed as above, he cannot be injured by the decision of which he complains, and, of course, cannot ask a reversal of the judgment." In addition to which, the counsel for the plaintiffs below says he abandons his exceptions.

*Judgment affirmed.*