MICHAEL DOYLE *vs.* THE COMMISSIONERS OF BALTIMORE COUNTY.—*December,* 1842.

By the act of 1838, chap. 392, sec. 3, every deposite of money as a wager or bet upon elections, is forfeited, and to be paid over to the levy court or county commissioners of the county. The forfeiture attaches to the deposite the moment it is made, and the courts or commissioners may recover the same in their own names.

This being the public law of the land, a knowledge of it is imputed to every person in whose hands such a deposite is made.

No notice or warning is necessary to prevent the payment of the deposite to the parties to the bet. If such payment be made, it is at the risk of the person making it.

Where the plaintiff, in an action to recover a forfeiture, erroneously deemed it essential to give notice to the defendant not to part with the thing forfeited, evidence for that purpose improperly admitted by the county court, *is not* such an error as will induce this court to reverse the judgment upon appeal. It did the appellant no injury.

The deposite of a note of the *Bank of Virginia,* as a wager or bet, is a deposite of money within the act of 1838, chap. 392.

Where the court cannot grant the entire prayer as made, though a portion of it in a separate, distinct form, might have been given, it is not error to reject the whole.

In an action to recover the forfeiture of the deposite under the act of 1838, the jury may award damages equal to the value of the money forfeited.

It is not essential to a recovery under the act of 1838, that both parties to the bet should deposite money. If either make such a deposite it is forfeited, though the deposite of the other may not be forfeitable.

In an action of debt to recover a statutory penalty, the defendant moved in arrest of judgment, because the declaration did not conclude "against the statute in the case made and provided;" nor contain any "averment that the offence was committed contrary to the statute on which the suit was brought," nor any "averment that the offence was committed contrary to any statute," but *Held*, that the words "whereby and by force of the statute in such case made and provided, the said sum became forfeited" found in the nar, were a sufficient compliance with the rules of pleading.

APPEAL from *Baltimore* county court.

This was an action of debt to recover the sum of $200, brought by the appellees on the 9th April, 1841, who declared, that whereas, on the 1st day of October, in the year eighteen hundred and forty, at the county aforesaid, a certain *William Doebaker*, and a certain *John Crandall*, did bet and wager each the sum of one hundred dollars, upon the result of the election of Electors of President and Vice President of the *United States*, in the *State of Pennsylvania*, to take place on the thirtieth day of October, in the year aforesaid. And whereas, the said parties did then and there deposite, each the sum of one hundred dollars, being the sum of money so bet and wagered as aforesaid, in the hands of the said *Michael Doyle*, as a deposite of the sum so bet, and between them. And whereas, the said *William Doebaker*, did then and there, assign and transfer all his right, title and interest in and to the said bet and wager, and in and to the money deposited as aforesaid, in the hands of the said *Michael Doyle*, unto a certain *William Snyder*, of the county aforesaid; *whereby and by force of the statute in such case made and provided*, the said sum of two hundred dollars, then and there so deposited, in the hands of the said *Michael Doyle*, became forfeited and payable to *the commissioners of Baltimore* county, for the use of primary schools in the said county; of all which premises the said *Michael Doyle* then and there had notice. Whereby an action hath accrued to the said commissioners to demand and have for the use of the said primary schools of said county, of and from the said *Michael Doyle*, the said sum of two hundred dollars. Nevertheless, the said *Michael Doyle*, although, &c.; but to pay the same,

or any part thereof, the said *Michael Doyle* hath hitherto refused, and still doth refuse, to the damage of *the said commissioners of Baltimore* county, three hundred dollars, and therefore they bring suit, &c. The defendant pleaded *nil debet*, and the jury found a verdict for the plaintiff of $200, &c.

The defendant moved in arrest of judgment for the following reasons:—

1st. Because the declaration in this cause does not conclude against the statute in the case made and provided.

2nd. Because the declaration contains no averment that the offence was committed contrary to the statute on which the suit was brought.

3rd. Because the declaration contains no averment that the offence was committed contrary to any statute.

4th. Because of other matters apparent on the record.

The county court rendered judgment for the plaintiffs.

*1st Exception.*—At the trial of this cause, the plaintiffs gave in evidence by a competent witness, that a certain *William Doebaker*, in October, 1840, by the hands of *Henry Snyder*, deposited in the hands of the defendant, a one hundred dollar bank note as a bet, on the issue of the Presidential election, then soon to take place in the *State of Pennsylvania;* that defendant stated at the same time a like sum was deposited as a bet against it, but that witness did not know by whom it was made, but afterwards understood it was *John Crandall;* that before the election *Doebaker* assigned his interest in said bet to said *Snyder;* that shortly after the election took place, and before the returns came in, *Snyder* called on the defendant and warned him not to pay over the deposite without both parties were present, which defendant promised accordingly. And for the purpose of shewing a further warning to the defendant against paying over the said deposite to the supposed successful party, the plaintiffs offered in evidence a warrant issued by a justice of the peace at the suit of *W. Snyder*, for the recovery of the $100 deposited by *Doebaker*, and assigned as aforesaid, dated 17th November, 1840.

To the reading of which warrant in evidence for the purpose aforesaid, the defendant excepted, and his exception was over-ruled by the court, MAGRUDER, A. J.

*2nd Exception.*—In addition to the evidence in the first bill of exceptions, which it is agreed shall be incorporated into and made a part of this exception, the plaintiffs further gave in evidence, that the said *Crandall* was present at the trial before the magistrate on the aforesaid warrant, and acted as if inte-rested therein, and that on the hearing of the appeal in this court from the decision of the magistrate, the said *Crandall* was present and acted as if interested therein, and gave direc-tions to the counsel of defendant, and conferred with him on the trial. And the plaintiffs, in order to show that the defen-dant was warned not to pay over the deposite to *Crandall,* or to the successful party, and that he was advertised that the same was forfeited to the plaintiffs, the plaintiffs gave in evi-dence by the counsel who acted for *Snyder* in the aforesaid trial, that *Baltimore* county court decided on said appeal, and distinctly announced the fact, that neither of the betting parties was entitled to the sums deposited, but that the same was for-feited to the plaintiff; and also gave in evidence, that the coun-sel for the defendant was present and heard the decision of the court; to the offering of which said evidence, the counsel for the defendant excepted, and his exception was overruled by the court.

*3rd Exception.*—In addition to the testimony offered in the preceding bills of exceptions, which it is agreed shall be incor-porated in this, the plaintiff's third bill of exceptions, the plaintiff further gave in evidence by a deputy sheriff, that when the subpœna on the aforesaid appeal was served on the defen-dant, which summons bears date the 4th of January, 1841, the defendant admitted that he then held the deposite of the bet aforesaid, and stated that it was *Crandall's* affair, and wished that he could get rid of the affair. The plaintiffs further gave in evidence by the same deputy sheriff, that when the defendant was served with the original writ in this case, his impression is, the defendant made the same admission as when

he was served with the aforesaid subpœna. And the plaintiff further gave in evidence, that on the trial before the magistrate on the aforesaid warrant, the said *Crandall* was present, acting as the agent of said *Doyle*, (but the plaintiffs gave no further evidence of his agency,) and that the said *Crandall* did not object that the money had been paid over by *Doyle* to him, or that the said *Crandall* did not deposite $100 for his bet; and further, that on the trial in county court, on the appeal aforesaid, the attorney of *Doyle* did not object that the money had been paid over, or that *Doyle* did not receive *Crandall's* bet of $100; to the admissibility of any and all which testimony, the defendant objected, and his objection was overruled.

*4th Exception.*—The defendant, to sustain the issue on his part, offered testimony that the stake deposited by *Doebaker*, was a $100 note of a *Virginia* bank, which the defendant receiving, wrapped up in a piece of paper and laid it aside by itself; that at that time, the *Virginia* banks had suspended specie payments, and that their notes were one and a quarter or one and a half per cent. below the value of *Baltimore* bank notes, and that the *Baltimore* bank notes were two and a half per cent. below specie; that said *Virginia* notes would not at that time be received in the banks of *Baltimore* on deposite, or in the payment of notes due in said banks. The defendant further offered in evidence by *James Smith, Jr.*, that he is now, and was at the time of the making of the bet aforesaid, the clerk of the defendant; has access to all his books, and knows that said *Crandall* did not deposite any money with *Doyle*, but put up the bet of *Crandall* of $100, by charging the account of said *Crandall* with that amount of notes then on deposite with said *Doyle*, belonging to *Crandall*, which said notes were notes of individuals, made since the suspension of specie payments in the year 1834; all of which were under the denomination of $5, commonly called shin plasters, and were then in circulation in the community as currency. The defendant further offered in evidence by the said *Smith*, that shortly after the Presidential election in 1840, in the *State of Pennsylvania*, there were for many days contradictory rumors as to the issue

of that election; that in a week after it was finally ascertained how the election had gone in that State; he was told by the defendant that the bet had been paid over to *Crandall*, and that on one occasion, shortly after the said *Pennsylvania* election, he recollects he heard the defendant remark to a gentleman in the presence and hearing of *Crandall*, that he had paid over to *Crandall* the aforesaid bet, and that *Crandall* did not deny it. And the plaintiffs further proved on the cross examination of the defendant's witnesses, that *Virginia* bank notes and the shin plasters referred to above, passed current from hand to hand in the city of *Baltimore*, and in purchases up and down the streets; that *Crandall* had constant dealings with the defendant before October, 1840, and continually from that time down to within two months of the present time; that *Crandall* deposited shin plasters with the defendant, and drew out from time to time from defendant, *Baltimore* bank notes, *Virginia* bank notes, and the various kinds of currency afloat in the community.

Whereupon, upon the whole testimony in the preceding bills of exceptions, which it is agreed shall be incorporated into this bill of exceptions, and made a part thereof, the defendant prayed the opinion and direction of the court to the jury—

1st. That if the jury believe from the evidence, notes were deposited, and not money, then the plaintiffs cannot recover.

2nd. If the jury believe that a bank note or bank notes were put up on one side, and notes of private individuals under the denomination of five dollars, made since the suspension of specie payments in the year 1834, and then in circulation in this community as currency, were put up on the other side, the plaintiff cannot recover.

3rd. If the jury believe that the notes staked were of less value than $200 in gold or silver, or either, the plaintiffs cannot recover.

4th. If the jury believe that the bet was paid over to *Crandall* before this suit was brought, the plaintiffs cannot recover in this action.

490 CASES IN THE COURT OF APPEALS

Doyle *vs.* The Com'rs. of Balt. County.—1842.

5th. If the jury believe that the deposite made with *Doyle* by *Doebaker*, was a bank note of a *Virginia* bank of the denomination of $100, and at the time said note was deposited, the bank which issued it had ceased to redeem its issues in gold and silver, and that said note by reason of the failure of said bank so to redeem its issues depreciated in value, and would not be taken in payment of debts in the city of *Baltimore*, then the plaintiffs are not entitled to recover.

6th. And if the jury shall believe the facts stated in the last prayer, and that *Crandall*, at the time he gave orders to *Doyle* to put up $100 for him, had no other funds to his credit with *Doyle* but the issues of individuals, such as are described in the second prayer of the defendant in this bill of exceptions, and that the deposite of said *Crandall* was made by the said *Doyle's* charging the account of said *Crandall* with issues as aforesaid, amounting to one hundred dollars of said issues, then the plaintiffs are not entitled to recover.

And the plaintiff thereupon moved the following ten prayers:

1st. That if the jury believe from the evidence, that there was a deposite made with the defendant of $200 in the manner set out in the declaration, the same was forfeited to the plaintiffs for the purposes provided in the 3rd sec. of the act of 1838, chap. 392.

2nd. That no payment over by the defendant to *Crandall*, at any time, (even if the jury should believe from the evidence there had been such payment,) furnishes any defence in this action.

3rd. That no payment over by the defendant to *Crandall*, after the warning not to do so by *Snyder*, and his promise not to do so, (if the jury believe such warning and promise,) furnish any defence in this action.

4th. That no payment over by the defendant to *Crandall*, after service on defendant of the warrant given in evidence, dated the 17th November, 1840, furnishes any defence in this action.

5th. That no payment over by the defendant to *Crandall*, after the decision of *Baltimore* county court, at January term

last, in the case of *Snyder vs. the defendant*, furnishes any defence to this action.

6th. That no payment over of the deposite by defendant to *Crandall*, after being served with the writ in this case, furnishes any defence to this action.

7th. That bank notes (if the jury believe such was the character of the deposite in question,) constitute a part of the common currency of the country, and ordinarily pass as money, that they are to be regarded in the ordinary concerns of this community as money, and are to be considered and treated as money.

8th. That if the jury believe from the evidence, that the defendant received $100 from *Snyder* as a deposite of a bet, to be met with a like amount from *Crandall*, or some other party, and that he held out the impression to *Snyder* that a sum of $100 had been placed against *Snyder's* $100, that then the defendant is estopped from setting up in defence of this action, that there had been no correspondent sum of $100 deposited with him.

9th. That the defendant having offered proof that he had paid over the $100 deposited with him by *Snyder*, as stated in the declaration to *Crandall*, as the winning party, he is estopped from setting up in defence of this action, that *Crandall* had made no correspondent deposite of a like sum of $100.

10th. That if the jury believe from the evidence that *Crandall* was in the habit of depositing money with the defendant before the deposite of the bet, as set forth in the declaration, and afterwards, from time to time, down to some months since the institution of this suit, and that the defendant had thus an opportunity of re-instating himself in possession of the amount of the deposite, that then no payment at any time over to *Crandall*, of the special money so left on deposite, (should the jury even believe there was such payment over,) affords an objection to a recovery by the plaintiffs of the amount so deposited.

The court, (MAGRUDER, A. J.,) refused to grant the six prayers, or either of them offered by the defendant, and granted the seven first prayers offered by the plaintiffs, but refused to

grant the 8th, 9th and 10th prayers offered by the plaintiffs. To the refusal of which six prayers of the defendant, and the granting of the first seven prayers of the plaintiffs, the defendant excepted.

The verdict and judgment being for the plaintiff, the defendant prosecuted this appeal.

The cause was argued before BUCHANAN, C. J., STEPHEN, ARCHER, DORSEY and SPENCE, J.

By ADDISON for the appellant, and
By WILLIAMS for the appellee.

DORSEY, J., delivered the opinion of this court.

By the third section of the act of 1838, chap. 392, every deposite of money as a wager or bet upon elections, is forfeited, and to be paid over to the levy courts or county commissioners of the county. The forfeiture attaches to the deposite the moment it is made. For this, see *Gelston vs. Hoyt,* 3 *Wheat.* 311, and the authorities there referred to. This being the public law of the land, a knowledge of it is imputed to every person in whose hands such a deposite is made. No notice or warning therefore, is necessary to prevent the payment of the deposite to the parties to the bet. If such payment be made, it is at the risk of the person making it, who must abide the consequences of his unauthorised act. It hence follows, that the county court erred in permitting the warrant to be read to the jury, as stated in the appellant's first bill of exceptions, it being irrelevant to the issue which the jury were sworn to try. But for this error, their judgment ought not to be reversed. The appellant could sustain no injury from the reception of the testimony objected to. Its admission conferred on him a benefit, rather than inflicted an injury, as the jury might thereby reasonably infer, that to entitle the appellees to recover, they must prove a warning or notice to the appellant, not to pay over the deposite to the winning party to the bet. The remarks made on the first bill of exceptions are equally applicable to the second bill of exceptions. The tes-

timony there objected to, and admitted by the court, being offered to prove a warning to the appellant, not to pay over the money to *Crandall,* and a notice to him, that the appellees were entitled thereto.

The testimony permitted to go to the jury in the third bill of exceptions, so far as it tended to prove the receipt of the deposite by the appellant, was properly received by the court, but such parts of it as were offered to disprove the payment of the deposite to *Crandall,* were impertinent to the issue, and therefore inadmissible. But its only effect being to establish a fact wholly immaterial to the issue in the cause, and not injurious to the appellant, its reception by the court is no ground for the reversal of the judgment. The testimony thus improperly received, could work no detriment to the appellant, but might have redounded to his benefit, by inducing the jury to believe, that if the deposite were without warning, or notice of the claim of the appellees, their verdict must be for the appellant.

The first prayer in the appellant's fourth bill of exceptions, calls on the court to instruct the jury, that if they "believe from the evidence that notes were deposited and not money, then the plaintiff cannot recover." If by notes is to be understood the promissory notes of the parties to the wager, or of other persons, the court were fully justified in refusing the prayers; because, by the uncontradicted evidence in the cause, the stake deposited by *Doebaker,* was a hundred dollar bank note of the bank of *Virginia,* and therefore, the evidence before the jury did not warrant the court in granting the instruction prayed. But if by notes were meant bank notes, as the argument on both sides assumes, then the prayer was properly refused. This court, in the case of *Towson vs. The Havre de Grace Bank,* 6 *Harr. & John.* 53, having said that the objection, "that bank notes are not money, cannot be sustained; they answer all the purposes of money in the ordinary concerns of the community; by common consent they are treated as money, in the payment of debts, the purchase of goods and lands, and in the every day transactions between man and man, and at this hour can only be considered as such. They are a

legal tender, unless especially objected to at the time, and will pass by will under the general description of money"—as "all my money in such a drawer." And the same doctrine is to be found in *The Bank of the United States vs. The Bank of Georgia,* 10 *Wheat.*

We approve of the refusal to grant the appellant's second prayer in his fourth bill of exceptions, because, if it were conceded that *Crandall's* stake deposited, consisted wholly of shin-plasters, as they are termed, and that nothing could be recovered for them, it requires the court to instruct the jury, that no recovery could be had on account of $100 *Virginia* bank note, deposited by *Doebaker.*

The rejection of the third prayer of the appellant in his fourth bill of exceptions, requiring the court to instruct the jury, that if they believed "that the notes staked were of less value than $200 in gold or silver, or either, the plaintiffs cannot recover," is too obviously correct to require any assignment of reasons to sustain it.

The refusal to grant the appellant's fourth prayer in his fourth bill of exceptions, follows as a corollary from the interpretation given in the commencement of this opinion to the 3rd sec. of the act of 1838, chap. 392.

The fifth prayer in the appellant's fourth bill of exceptions, was, we think, rightly refused by the court below. It required too much at the hands of the court. It called on it to instruct the jury, that the appellees could recover nothing if the *Virginia* bank notes were not at that time redeemable in gold or silver, or were so depreciated, that they would not be received in *Baltimore* in payment of debts. The failure of a bank to redeem its notes in specie, does not *per se* change the character or destroy the currency of its notes. And there was no evidence from which the court could submit it to the jury to find, that *Virginia* bank notes were so depreciated in value as not to be taken in payment of debts in the city of *Baltimore,* except it be in payment of debts due to the banks. But, on the contrary, the proof was, that they "passed current from hand to hand in the city of *Baltimore,* and in purchases up and

down the streets." But suppose they were depreciated to the extent assumed in the prayer. According to the testimony before us, their greatest depreciation was not more than four per cent. below the specie standard, and to the extent of such their value, the appellees were assuredly entitled to recover.

We approve also of the county court's opinion on the sixth prayer of the appellant's fourth bill of exceptions. *Doebaker* having deposited his $100 in bank notes on the wager, it matters not whether *Crandall's* stake against it was a horse, or any thing else, the bank notes, that is, the money of *Doebaker* was, under the act of Assembly, forfeited and payable to the county commissioners, although the horse or other property deposited by *Crandall* (not being money,) would not be.

The granting of the seven first prayers of the plaintiff in his bill of exceptions, follows as a necessary consequence of the principles which have been adopted in the preceding portion of this opinion.

Were the county court right in overruling the motion in arrest of judgment, is the only remaining branch of this case which we are required to examine?

Three reasons were assigned in the court below for arresting the judgment, to wit:

1st. "Because the declaration in this cause does not conclude against the statute in the case made and provided.

2nd. Because the declaration contains no averment that the offence was committed contrary to the statute on which the suit was brought.

3rd. Because the declaration contains no averment that the offence was committed contrary to any statute."

The authority mainly relied on by the appellant in support of the reasons assigned for arresting this judgment, is the case of *Lee vs. Clarke,* 2 *East,* 340, in which *Lord Ellenborough,* in delivering his opinion, says, "but it is contended, that the conclusion here, 'whereby and by force of the statute, an action hath accrued,' &c., and will supply the want of the other allegation," meaning *contra formam statuti.* "If it had said statutes, in the plural number, perhaps that might have done,

but it certainly is not sufficient with reference only to the *Stat.* 2 *Geo.* 3, *chap.* 19, because that alone would not support the action." The plaintiff's right to recover in the case in 2 *East,* rested not on a single but several statutes. In the case before us, the declaration does conclude, "whereby and by force of the statute," &c., and the action being wholly founded on a single statute, the declaration, even upon the principles recognized in 2 *East,* stands exempt from the defect so strenuously urged against it. It is also clearly sustained by the more recent case of the *Attorney General vs. Rattenbury,* 4 *Eng. Excheq. Rep.* 134, where, in a prosecution for a forfeiture for an offence, created by a particular statute, it was held not to be necessary to charge the acts illegally committed, to have been "against the form of the statute," &c., but that it was sufficient to allege the forfeiture to have been "according to the statute," &c., or "by virtue of the statute," &c., fully equivalent to which is the allegation in the present declaration, of "whereby and by force of the statute in such case made and provided, the said sum of two hundred dollars, then and there so deposited, became forfeited and payable," &c. The mode of declaring now complained of, is in strict conformity to a precedent, in 1 *Harr. Ent.* 621, taken from 7 *Went.* 223.

But conceding it was requisite in all the cases referred to, to charge the offence committed as *contra formam statuti,* such an allegation is wholly inappropriate to the case before us. In the authorities adduced, the suits were instituted for the recovery of penalties imposed on the perpetrators of certain acts prohibited by statute. In stating the perpetration of those acts, it might, not without reason, be requisite to state, that they were committed against the form of the statute in such case made and provided. But as respects the acts which create the forfeiture, for the recovery of which the present action is instituted, they are not in terms prohibited by any statute.

All that the act of Assembly does in relation to the subject is, that it declares every deposite of money in this State, as a wager or bet on elections to be held out of the State of *Maryland,* shall be forfeited and paid over to the levy court or county

commissioners of the county, for the use of primary schools in said county. We think, therefore, that the declaration complained of, sufficiently indicates to the defendant the act of Assembly under which it is filed, and that the usual allegation (in suing for penalties,) of *contra formam statuti* is properly omitted.

A ground for arresting the judgment has been relied on in this court, which does not appear to have been one of the reasons assigned for that purpose in the court below, and that is, that the commissioners of *Baltimore* county are incompetent to sustain this action; that the suit should have been brought in the name of the State. And to sustain this position, *Fleming qui tam vs. Bailey*, 5 *East*, 513, has been cited. The words of the statute on which the action was there instituted, were, "that all pecuniary penalties imposed by this act, shall, when recovered either by action in any court, or in a summary way before any justice, be applied, one moiety to the plaintiff in any such action, or the informer before any justice, the other moiety to the King." The statute further provided, that the penalties over £20, each, should be sued for in the name of the informer, but made no provision authorising the informer to sue in his own name, where the penalties did not exceed £20 each. The suit was brought by *Fleming qui tam*, for three penalties, each of the sum of £20. The court held, that the action could not be sustained. *Justice Lawrence* observing, in reference to the portion of the statute recited, that it "only applies to the penalty *when recovered*, but does not give the informer the original power to sue for it." Thus placing his decision upon the peculiar phraseology of the statute which gave no claim to the penalty until it was recovered, and such recovery, therefore, could only be had in the name of the King. Had the statute directed that the penalty, as soon as it was incurred and sued for, should be paid to the informer, the inference is manifest, that in the opinion of the learned judge, he could have maintained the action in his own name. In the case before us, the language of the act of Assembly is too clear to admit of a doubt. It declares that the

entire deposite "shall be forfeited and paid over to the levy courts or county commissioners of the county, for the use of primary schools in said county," and their right to sue for it in their corporate name, is a point, we think, too clear for controversy. JUDGMENT AFFIRMED.